Israel LICHTENSTEIN, David Lichtenstein, Simon Lichtenstein and Joseph Lichtenstein, individually and as co-partners doing business under the firm name and style as Hazel Bracelet and Chain Manufacturer, Plaintiffs,

v.

JEWELART, INC., Defendant.

No. 81 CV 477 (ERN).

United States District Court,
E. D. New York.

Sept. 21, 1982.

legedly due the plaintiff partners of Hazel Bracelet and Chain Manufacturer ("Hazel Chain"), a New York partnership, for producing and supplying gold jewelry to defendant Jewelart, Inc.'s ("Jewelart"), a California corporation, special order. Over the past year and a half, the parties have attempted to negotiate an extrajudicial settlement of this case. Unfortunately, the settlement process has broken down and both parties now seek judicial resolution of motions they have held in abeyance since October 1981. Pursuant to Rule 55(b), F.R. Civ.P., Hazel Bracelet moves for a default judgment based on a default entered by the court clerk for Jewelart's failure to answer their complaint. Jewelart cross-moves under Rule 55(c) to set aside the entry of default on the grounds that it is not subject to personal jurisdiction in this Court. For the reasons set forth below, defendant's cross-motion is granted and this action is dismissed for lack of personal jurisdiction.

According to plaintiffs' complaint, Jewelart and Hazel Chain engaged in a series of contracts during 1980 that involved Hazel Chain manufacturing, to Jewelart's specifications, various items of gold jewelry. By the end of 1980, both parties agree that Jewelart had paid $297,892 of the $397,892 owed Hazel Chain for the jewelry. When Jewelart's financial condition deteriorated in early 1981 and it failed to satisfy the outstanding balance of $100,000, Hazel Chain filed a complaint asserting a cause of action for breach of contract and for an account stated.

On March 16, 1981, the parties signed a stipulation extending defendant's time to answer or otherwise move against the complaint to April 15, 1981. Ten days later, in an effort to settle the dispute, defendant's California attorney wrote a letter to plaintiff's New York attorney acknowledging Jewelart's $100,000 debt to Hazel Chain and indicating that a formal payment proposal would be made prior to April 15. This proposal was made by a letter dated April 8, 1981.

Kraver & Martin by Richard M. Kraver, Roy I. Martin, Lewis S. Fischbein, New York City, for plaintiffs.

Reid & Priest by John M. Nonna, Peter C. Williams, New York City, for defendant.

## MEMORANDUM ORDER

NEAHER, District Judge.

This diversity action was commenced on February 18, 1981, to recover monies al-

Apparently, subsequent negotiations. led to an arrangement whereby Jewelart would pay its obligation to Hazel Chain, as well as its debts to nine other creditors, over a period of time once it received an expected 1.2 million dollar income tax refund. Accordingly, on June 8, 1981, Jewelart paid Hazel Chain the first installment of $38,500. Five days prior to this payment, however, plaintiffs filed notice of Jewelart's default with the court clerk pursuant to Rule 55(a), F.R.Civ.P.[1] Thereafter, Jewelart failed to make further payments under the payment schedule. The instant motion and cross-motion were then filed in September and October of 1981.[2]

As the Court's ruling on defendant's Rule 55(c) cross-motion is dispositive, plaintiffs' motion for a default judgment need not be considered. Rule 55(c) provides this Court with the discretionary power to set aside an entry of default for "good cause." 6 Moore's Federal Practice ¶ 55.-10[2], at 55–240 (1981). Because the entry of default under Rule 55(a) is largely a formal matter performed by the court clerk, the standard for granting a Rule 55(c) motion is lower than the "excusable neglect" standard for opening a default judgment under Rule 60(b). *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Indeed, the second circuit's recent opinion in *Meehan, supra,* indicates that a default should be vacated whenever the default was not willful, the defaulting party has a meritorious defense and no substantive prejudice will result. *Id.* As the *Meehan* court noted, the extreme sanction of a default judgment should be employed only as a last resort. *Id.* Any doubts, therefore, "should be resolved in favor of setting aside a default so that a determination may be made on the merits of the case." *Morris v. Charnin,* 85 F.R.D. 689, 690 (S.D.N.Y.1980) (quoting *Alopari v. O'Leary,* 154 F.Supp. 78 (E.D.N.Y. 1957)); *see Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 374 (D.C.Cir. 1980).

Although the three-factor test utilized in *Meehan, supra,* would normally be employed to evaluate the merits of a Rule 55(c) motion, courts have held that, regardless of other considerations, an entry of default must be vacated if it is found to be unsupported by jurisdiction. *Kadet-Kruger & Co. v. Celanese Corp.,* 216 F.Supp. 249, 250 (E.D.Ill.1963); *Berlanti Constr. Co. v. Republic of Cuba,* 190 F.Supp. 126, 129 (S.D. N.Y.1960). The rationale for this rule is simple: a defendant has no obligation to answer a complaint filed in a court that lacks personal jurisdiction over him. *See Kadet-Kruger & Co. v. Celanese Corp., supra,* 216 F.Supp. at 250. Since any default judgment rendered without jurisdiction would be subject to collateral attack, adjudication by the original forum of its jurisdiction pursuant to a Rule 55(c) motion aids both the litigants and the courts in the efficient resolution of the litigation. Moore's Fed.Prac., *supra,* ¶ 55.10[1], at 55–233 n.13. In effect, the determination of a Rule 55(c) motion based on the lack of jurisdiction over the defendant when supported by affidavits and fully argued by the parties, can and should be treated as an initial motion to dismiss. If the jurisdictional defense is meritless, a default judgment would issue, and if the defense is justified, the plaintiff could seek relief in a proper forum.[3]

---

**1.** According to plaintiffs' affidavits, defendant failed to provide Form UCC–1 securing its indebtedness to plaintiffs as required by the settlement agreement.

**2.** Prior to a ruling on either party's motion, plaintiffs requested an informal motion conference. At this conference, the parties agreed on the general terms for a settlement. The agreement, however, was never consummated, thus necessitating this decision.

**3.** The Court notes that defendant also would be entitled to relief under the *Meehan* test. First, defendant asserts that its failure to file an answer was not willful, because it was based on the good faith belief that settlement negotiations obviated judicial action. This point is controverted by plaintiffs. Resolving the doubt in favor of defendant, *Morris, supra,* 85 F.R.D. at 690, the Court finds that defendant's failure to plead was not willful. See *Whitman v. United States Lines, Inc.,* 88 F.R.D. 528, 530 (E.D. Tex.1980). Second, the defendant's contention that this Court lacks jurisdiction clearly is a meritorious defense. *See infra.* Third, it does not appear, nor do plaintiffs contend, that any

Turning now to the merits of the jurisdictional defense, it is apparent that both parties are in substantial agreement regarding the jurisdictional facts in issue, and both recognize that resolution of this question is governed by the law of New York. *See Bulova Watch Co. v. K. Hattori Co.,* 508 F.Supp. 1322, 1333 (E.D.N.Y.1981). Plaintiff asserts that defendant is subject to jurisdiction either under the "doing business" test of CPLR § 301, or the "transaction of business" test of CPLR § 302(a)(1). *See* N.Y.Civ.Prac.Law §§ 301, 302(a)(1) (McKinney 1972). Service of process is not at issue.

CPLR § 301 permits the exercise of jurisdiction over out-of-State corporations that are operating within New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917, 920 (1917). Even accepting as true all the contacts plaintiffs allege Jewelart has with New York, it is apparent that the defendant is not "doing business" with the regularity required by § 301. Plaintiffs merely allege that over a period of a year, Jewelart mailed 38 purchase orders from its California office to Hazel Chain's New York plant and, during that same period, telephoned manufacturing instructions to plaintiffs' employees. The only other contacts that plaintiffs' papers allege are occasional visits by Jewelart employees to the New York Coliseum, unspecified solicitation of sales from the New York populace and the mail order purchasing of jewelry from other New York manufacturers. The cumulative significance of all these activities is that Jewelart engages in mail and telephonic jewelry transactions with New York residents, but maintains no local business situs

or permanent employees in the State. It is well settled that even regular solicitation of sales in New York without more is insufficient to establish a corporate presence under § 301. *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir. 1967); *see Miller v. Surf Properties, Inc.,* 4 N.Y.2d 475, 151 N.E.2d 874, 176 N.Y.S.2d 318 (1958). Similarly, the placing of purchase orders with New York sellers, whether by telephone, mail or in person, is not sufficiently regular or extensive to constitute "doing business" in the State.

The contacts alleged by plaintiffs are also insufficient to establish longarm jurisdiction under § 302(a)(1). Courts have consistently held that the mere telephoning or mailing of orders to a New York seller by an out-of-State buyer does not subject the buyer to *in personam* jurisdiction under § 302. *Empresa Nacional Siderurgica v. Glazer Steel Co.,* 503 F.Supp. 1064, 1065–66 (S.D.N.Y.1980); *Rainbow Indus. Prods. v. Haybuster Mfg.,* 419 F.Supp. 543, 545–46 (E.D.N.Y.1976). Nor is this conclusion changed by the quantity of purchase orders, the number of phone calls, or the length of the parties' business relationship. For example, the New York courts have denied jurisdiction over an out-of-State buyer who had ordered goods over the telephone from the plaintiff for 30 years. *M. Katz & Sons Billiard Prods., Inc. v. G. Correale & Sons, Inc.,* 20 N.Y.2d 903, 232 N.E.2d 864, 285 N.Y.S.2d 871 (1967). Indeed, an out-of-State buyer's employees may even enter New York to pick up mail ordered goods without subjecting the buyer to New York jurisdiction. *Galgay v. Bulletin Co.,* 504 F.2d 1062, 1067 (2d Cir. 1974).[4] This Court must conclude, therefore, that defendant is not subject to personal jurisdiction in New York.

---

prejudice would result if the entry of default were merely set aside.

4. The cases relied upon by plaintiffs in their memorandum of law are readily distinguishable. In each case jurisdiction was premised on sales contracts negotiated and executed in person by the defendant or his agents in New York. No such activities are alleged in this case concerning the transactions in question. See *Liquid Carriers Corp. v. American Marine*

*Corp.,* 375 F.2d 951, 954–55 (2d Cir. 1967), for a discussion of this crucial distinction. Defendant's "understanding" that employees came to New York to solicit *sales* cannot be used to support jurisdiction under § 302(a)(1) because the cause of action alleged in this case does not arise out of these contacts. See N.Y.Civ. Prac.Law § 302(a)(1) commentary at 63 (McKinney 1972).

Plaintiffs have requested the Court to allow further discovery on the jurisdictional issue prior to dismissing this action. By the parties' own stipulation dated March 16, 1981, which this Court approved in an order dated May 28, 1981, plaintiffs were granted the right to depose defendant and inspect any record that was of relevance to this litigation. Thus, plaintiffs have had both the opportunity and the time to produce evidence of defendant's activities in New York. This Court can see no purpose that a new discovery order could serve other than delay, and accordingly plaintiffs' request is denied.

Plaintiffs also request that this Court award attorneys fees in the amount of $5,000 and require Jewelart to post an undertaking for the amount of their claim if their motion for default judgment is denied. It is, of course, true that the granting of a Rule 55(c) motion "rewards" a defendant with more time to respond to a complaint. Apparently, some courts have sought to remove this incentive by awarding plaintiffs nominal attorneys fees in appropriate cases. *See Morisse v. Defensive Instruments, Inc.,* 55 F.R.D. 433, 435 (E.D. Wis.1972) ($400 awarded in order granting Rule 60(b) motion; defendant failed to appear despite written notice of default judgment hearing); *Hanley v. Volpe,* 48 F.R.D. 387, 388 (E.D.Wis.1970) ($100 awarded in Rule 60(b) order denying a default judgment; defendant failed to respond to plaintiff's request for an answer to his complaint). While this Court expresses no view on this practice, it believes that this case is not one for punitive measures. Similarly, plaintiffs have shown no special considerations which would require the posting of a bond by defendant. *See Thorpe v. Thorpe,* 364 F.2d 692, 694–95 (D.C.Cir.1966) (condition that defendant post bond prior to vacating default judgment required only under extraordinary circumstances). In fact, since there is no default judgment to secure, such an order would effectively grant the relief that this Court has determined it has no jurisdiction to award. Accordingly, plaintiffs' requests are denied in all respects.

The motion of defendant to set aside the default for lack of jurisdiction is granted and the action is dismissed.

SO ORDERED.