**Mark E. O'BRIEN, Plaintiff,**

v.

**The SAGE GROUP, INC., Bruce J. Serra, Jane Doe Serra, R.J. O'Brien & Associates, Inc., Commodity Exchange, Inc. d/b/a Comex, Barnes and Company, John Doe Courtney, Jane Doe Courtney, John Doe Caracata, and Jane Doe Caracata, Defendants.**

**No. 90 C 1606.**

United States District Court,
N.D. Illinois, E.D.

March 28, 1991.

**152**

Daniel George Loftus, Daniel Loftus, Chicago, Ill., for plaintiff.

Bruce J. Serra, pro se.

Kenneth M. Lodge, Vincent D. Pinelli, Ronald L. Sandack, Burke Smith & Williams Chartered, Chicago, Ill., for R.J. O'Brien & Associates, Inc.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant R.J. O'Brien & Associates, Inc. ("RJO") to vacate and set aside the default order entered against it by this court on February 1, 1991. RJO also moves for leave to file its appearance and answer

instanter. For the reasons discussed below, RJO's motions are denied.

## FACTS

This action was originally filed on April 28, 1989 in the U.S. District Court for the Western District of Washington State. On August 23, 1989, the plaintiff's complaint was served upon defendant RJO. The matter was then transferred to this court on March 19, 1990.

On January 23, 1991, plaintiff moved to default RJO which had not filed its appearance or answered the complaint. On February 1, 1991, counsel for O'Brien and RJO appeared before the court on a hearing on plaintiff's motion for default. At this hearing, plaintiff presented the court with a copy of the executed return of service on RJO, which indicated that service was made on August 23, 1989. RJO's oral response to plaintiff's motion of default was: "we're trying to investigate the validity of service. We have reason to believe—the plaintiff on August 23, 1989 purportedly made service on a receptionist at R.J. O'Brien & Associates, Inc."[1] RJO, however presented no argument to challenge the presumptive validity of plaintiff's sworn return of service. Consequently, the court granted plaintiff's motion for default against RJO from the bench at the February 1, 1991 hearing. RJO now moves to set aside the default pursuant to Fed.R. Civ.P. 55(c).

## DISCUSSION

Fed.R.Civ.P. 55(c) states, in relevant part: "For good cause shown the court may set aside an entry of default...." To succeed on a motion to set aside entry of default, the defendant must show: "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint."[2]

---

1. The return of service form indicates that service was made by handing a copy of the complaint and summons to Anita Burke at RJO's offices on West Jackson Blvd. in Chicago. The "Field Service Record" attached to the return form notes: "Anita Burke—authorized to except [sic] papers." Also attached to the return form

is the business card of Mary Ellen Scanlin, "Director of Marketing" for RJO.

2. This three-prong test is appropriate under both Fed.R.Civ.P. 55(c) and 60(b), but is "more liberally applied in the Rule 55(c) context. *DiMucci*, 879 F.2d at 1495. *See also Connecticut Nat'l Mortgage Co. v. Brandstatter*, 897 F.2d 883,

*Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir.1990), *quoting, United States v. DiMucci*, 879 F.2d 1488, 1495 (7th Cir.1989). Because RJO fails to establish the first element of this test—good cause for default—its motion to vacate default must be denied.

The traditional doctrine that defaults are strongly disfavored is no longer the rule in the Seventh Circuit. *See In re State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir.1990), *quoting Dimmitt & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1986) ("Traditionally, default judgments were strongly disfavored; however, 'this court has moved away from the traditional position....' "). At a time of unprecedented caseloads, district courts are becoming less tolerant of dilatory defendants and the Appellate Court is becoming increasingly reluctant to reverse a district court's refusal to set aside a default. *Id.* [3]

In its memoranda in support of the motion to vacate default, RJO argues that its failure to appear or answer plaintiff's complaint constitutes "excusable neglect" because it "believed in good faith that it had never been served." Defendant R.J. O'Brien & Associates, Inc.'s Motion to Vacate ("Motion to Vacate"), p. 5; Reply Memorandum, pp. 3–4. Significantly, RJO does not now contest the validity of service. Having recently been presented with the executed return of service form, RJO now acknowledges that it was served, and admits that it can not "adequately explain it's failure to respond to the summons which was apparently delivered to its office." Motion to Vacate, p. 5.

Nevertheless, RJO asserts that until it was shown a copy of the return of service, it genuinely believed that it had never been served. In support of its position, RJO has filed the affidavit of Kenneth M. Lodge, one of its attorneys. Mr. Lodge states that:

885 (7th Cir.1990) (a showing of good cause under Rule 55(c) "is not sharply distinguishable from 'excusable neglect' [under Rule 60(b) ], if it is distinguishable at all").

5. I first became familiar with the plaintiff's complaint when I advised by Joseph Pfingst, an attorney for [co-defendant] The Sage Group, Inc., that the Complaint had been filed in the United Stated District Court in Washington State. Upon learning of the pendency of this action, I contacted RJO to determine whether service had been made. I was advised that it had not.... I asked Mr. Pfingst as a courtesy to keep me advised if relief were to be sought against RJO.

6. ... I contacted the Clerk of the Court in Washington State to ensure that no action was being taken against RJO. My contact was by telephone. I was advised by the Clerk that no relief had been sought against RJO, and that the Court's docket did not show that service had been obtained upon RJO.

7. On at least one subsequent occasion ... I contacted the Clerk of the Court again, and was advised that service had still not been obtained. At that time, I suggested to the Clerk that it would be appropriate for the complaint to be dismissed since it had been pending more than 120 days and no service had been made. My suggestion was consistent with Rule 4(j)....

. . . .

9. When the Plaintiff initially moved for the entry of default against RJO, I personally spoke with Daniel Loftus, the attorney for the Plaintiff. I advised Mr. Loftus that RJO had not been served. He responded that he believed that RJO had been served by publication in the State of Washington. Several days later, Mr. Loftus advised my associate, Ronald L. Sandack, that service had in fact been made by a special process server many months earlier, but that the process server had not delivered proof of service because he had not been paid by the Plaintiff.

3. Although the issue before the Seventh Circuit in *State Exchange* concerned a default judgment rather than an entry of default, the reasoning for the Appellate Court's opinion applies equally here.

Although Mr. Lodge's statements perhaps establish his honest belief that service had never been made on RJO, they fall far short of establishing "good cause" under Rule 55(c). RJO's argument is essentially based on two points: first, that its "honest belief" was reasonable, in light of plaintiff's failure to file its proof of service; and second, that its "reasonable" belief that service had not been made provides good cause for its failure to appear and file responsive pleadings.

RJO's argument is unpersuasive. Although counsel for RJO may have been misled by plaintiff's failure to file its proof of service earlier in this litigation, it was not reasonable for RJO to rely on plaintiff's oversight and assume that the complaint was, in fact, never served. Fed.R. Civ.P. 4(g), which requires the party serving the process "to make proof of service thereof to the court promptly," also states that "[f]ailure to make proof of service does not affect the validity of the service." *See also* Siegel, Fed.R.Civ.P. 4, Original Practice Commentary, 28 U.S.C.A. ¶ C4–32 (1990 Supp.) ("Proof [of service], in other words, can be put together later—or amended by court leave, see Rule 4(h)—if need arises").[4] Thus, plaintiff's failure promptly to file RJO's proof of service neither detracts from the validity of that service, nor excuses RJO from appearing and answering or otherwise pleading to the complaint. In short, the absence of proof of service from the court file does not constitute affirmative proof that proper service has not been made. Thus, RJO's initial premise—that its "honest belief" was reasonable—is untenable.

However, even assuming that RJO's underlying belief (that it had not been served) was reasonable, it was nevertheless unreasonable for RJO simply to let matters sit. RJO had at its disposal the means to resolve all doubts about service by making an appropriate motion. For example, in his affidavit, Mr. Lodge states that he "suggested to the Clerk" of the court in Washington, that he would have been justified, under Fed.R.Civ.P. 4(j), in moving to dismiss the complaint. Significantly, chatting with a clerk of the court is not the same as making a proper motion before the court. RJO in fact failed to file any motion which might have forced the plaintiff to produce its proof of service. Instead, RJO's lawyers elected to do nothing—relying on their erroneous belief that service had not been made. By failing to take affirmative steps to protect its rights, RJO took the risk that service had been made (albeit without the subsequent filing of the proof of service) and that its failure to respond to the summons would result in default.

■ Consistent with the philosophy that the best defense is a good offense, RJO also attempts to rationalize its inaction by attacking the plaintiff. "Because Plaintiff delayed twenty-one months (21) in moving for default, RJO is at a loss to explain precisely why the summons and complaint was apparently never given to RJO's management and contested immediately." Reply Memorandum, p. 3. In other words, RJO blames plaintiff for failing to default it sooner; plaintiff's delay, RJO contends, allowed it to forget its erstwhile excuse.

RJO fails to recognize that the delay between the service of summons and the motion of default cuts both ways. Just as plaintiff had 21 months to move for default, RJO had 21 months to "investigate" the service of process and file appropriate motions to preserve its rights.[5]

Ultimately, all of RJO's efforts to justify its inaction fail. RJO never knew for a fact that it had not been served, it only assumed it had not been. To confirm its assumption, RJO was obliged to file an

---

4. This practice commentary note also points out that as a practical matter plaintiff should file its proof of service with the court as soon as possible. "[S]hould the defendant raise the objection, such as by motion to dismiss under Rule 12 ... the proof of service will be a relevant (though not necessarily decisive) paper among the plaintiff's opposing papers."

5. Conspicuously absent from Mr. Lodge's affidavit is any indication that counsel for RJO, in the "21 months" between the filing of the complaint and the motion for default, ever attempted to contact plaintiff's attorneys to inquire about service.

appropriate motion challenging service, or the lack thereof. RJO recognized the propriety of making such a motion, but nevertheless refused to act. Its complacency does not provide good grounds for vacating default under Rule 55(c).

### CONCLUSION

For the reasons discussed above, RJO's motion to vacate and set aside this court's February 1, 1991 default order is denied. Default judgment is entered against RJO in the amount of $40,000 plus interest, calculated at the statutory rate from June 22, 1987 to the date of this order.

IT IS SO ORDERED.