**Mark E. O'BRIEN, Plaintiff,**

**v.**

**The SAGE GROUP, INC., Bruce J. Serra, Jane Doe Serra, R.J. O'Brien & Assoc., Commodity Exchange Inc., Barnes & Co., John Doe Courtney, Jane Doe Courtney, John Doe Caracata, Jane Doe Caracata, Thomas F. Courtney, Jr., Defendants.**

**No. 90 C 1606.**

United States District Court, N.D. Illinois, E.D.

Jan. 21, 1992.

Daniel George Loftus, Daniel Loftus, Chicago, Ill., Thomas P. Sughrua, Bellevue, Wash., for plaintiff.

Joseph P. Pfingst, Laguna Niguel, Cal., Vincent Dominick Pinelli, Ronald Lloyd Sandack, Kenneth M. Lodge, Burke, Smith & Williams, Chicago, Ill., for defendants.

Bruce J. Serra, pro se.

## ORDER

NORGLE, District Judge.

Before the court is the "Motion to Vacate Void Judgment, Or In The Alternative To Dismiss The Case Due To Lack Of In–Personam Jurisdiction, Or In The Alternative, For Certain Other Relief" of the defendant R.J. O'Brien & Associates, Inc. ("R.J.O."). For the reasons that follow, the court grants the motion in part and denies it in part.

## FACTS

The plaintiff, Mark O'Brien, gave $40,000 to The Sage Group, Inc., for purposes of investing. However, after four ill-advised investments, the plaintiff's entire investment fund was depleted.

Believing he was cheated, plaintiff brought suit against The Sage Group, Inc., Bruce J. Serra, Jane Doe Serra, R.J.O., Commodity Exchange Inc., Barnes & Co., John Doe Courtney, Jane Doe Courtney, John Doe Caracata, Jane Doe Caracata, and Thomas F. Courtney, Jr. in the U.S. District Court for the Western District of Washington state. Pursuant to a forum-selection clause in a contract between the parties, the case was transferred to the Northern District of Illinois.

On January 9, 1991, plaintiff filed a motion for default against R.J.O. In open court on January 23, plaintiff was granted leave to withdraw the motion for default, because he did not, at that time, have proof that R.J.O. had been served. After filing the proof of service two days later, plaintiff refiled the motion for default against R.J.O. and a hearing was set for February 1.

At the February 1 hearing, R.J.O. asserted that it believed in good faith that it had not been served, apparently despite the proof of service summons plaintiff filed with the court. After hearing the arguments the court granted the motion for default and set a prove-up hearing for damages for March 22. On February 21, R.J.O. filed a "Motion to Vacate and Set Aside the Court's Order of February 1, 1991, and Leave to File Its Appearance and Answer Instanter" (hereinafter "R.J.O.'s February 21 Motion").

That motion, made pursuant to Federal Rule of Civil Procedure 55(c), reasserted R.J.O.'s argument that it made in the February 1 hearing that R.J.O. had been diligent in following the case, even though it knew it was named as defendant in the matter and had not filed an answer. It claimed that it believed in good faith that it had not been served and, therefore, fulfilled its duty as a proposed defendant by speaking with the clerk of court and other defendants on several occasions without filing an answer. This motion also abandoned any claim that R.J.O. had not been served and contained no other challenges to jurisdiction or service of process.[1] In an order dated March 28, 1991, the court denied R.J.O.'s motion and entered a default judgment in the amount of $40,000.

---

1. See R.J.O.'s February 21 Motion, at 5.

*O'Brien v. Sage Group, Inc.*, 136 F.R.D. 151 (N.D.Ill.1991).

On April 12, 1991, R.J.O. filed the present motion to vacate the allegedly void judgment or in the alternative seeking various other forms of relief. After examining the briefs and arguments, the court denies R.J.O.'s motion to vacate the entry of default, grants the motion to vacate the default judgment of $40,000, and enters judgment against R.J.O. in the amount of $20,-000. Plaintiff's requested attorney's fees are denied.[2]

## DISCUSSION

### I.

 Renouncing its previous claim that it was not served, R.J.O.'s present motion is based on its claim that the court does not have personal jurisdiction over it because plaintiff's summons was faulty, and therefore, the court's judgment of March 28, 1991, must be vacated and the action dismissed pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(4). Plaintiff responds that R.J.O. waived this argument by not asserting it earlier.[3] It is the defendant's burden to persuade the court that it improperly asserted jurisdiction over it in the original order of default. *Cf. Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986) ("[i]f the defendant, after receiving notice, chooses to let the case go to default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post judgment rule 60(b)(4) motion"). The court finds that the R.J.O. waived the right to challenge personal jurisdiction.

The issue of waiver of personal jurisdiction is governed by Rule 12 of the Federal Rules of Civil Procedure. Rule 12(h)(1) states: "A defense of lack of jurisdiction over the person, ... insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g)...."

Subdivision (g) states:

**"(g) Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. *If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted ...."

Fed.R.Civ.P. 12(g) (emphasis added).

The Seventh Circuit has stated that "[a] party may waive a defense of insufficiency of process by failing to assert it seasonably in a motion or their first responsive pleading." *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 (7th Cir.1991). "A party need not actually file an answer or motion before waiver is found." *Id.* at 732–33. Here however, R.J.O. did file a motion. R.J.O.'s February 21 Motion was, in essence, a Rule 12 motion which required a consolidation of all Rule 12 grounds for dismissal. *See Lichtenstein v. Jewelart, Inc.*, 95 F.R.D. 511, 513 (E.D.N.Y.1982) ("In effect, the determination of a Rule 55(c) motion based on lack of jurisdiction over the defendant ... can and should be treated as an initial motion to dismiss."). Under Rule 12(h), R.J.O.'s abandonment of their objection to the validity of service in their February 21 motion resulted in a waiver of the right to contest the validity of service, and with it all objections to personal jurisdiction. *Accord Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 13 (N.D.Ill.1986) (failure to make

---

**2.** The court cannot award attorney's fees in the absence of any authority. The American rule is that attorney's fees are not usually awarded to the victorious party. *See Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085 (7th Cir.1990). Plaintiff's complaint seeks attorney's fees, but does not give any legal justification for their award. Without such a legal support, the award of fees would be improper.

**3.** Plaintiff argues in the alternative that the defects in the summons are not sufficient to nullify its presumed validity. The court need not consider this argument given the court's disposition of this matter in plaintiff's favor on his first argument.

objections to service of a subpoena in first response waived objections); *see also Pusey v. Dallas Corp.*, 938 F.2d 498, 501 (4th Cir.1991) (failure to raise defense of improper service in timely manner resulted in waiver).

That R.J.O.'s motion is a Rule 12 motion is further supported by the fact that in it, R.J.O. also requested "Leave to File its Appearance." Although the court was not required to grant the motion given its ruling, had R.J.O. filed a responsive pleading, R.J.O. would have been prevented from challenging the court's personal jurisdiction, irrespective of Rule 12's provisions. *Lowery*, 924 F.2d at 732 (defense of insufficiency of process waived if not asserted prior to defendant's formal submission to cause); *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir.1990) (filing of answer even with defense waived personal jurisdiction objections when not reasserted). Similarly, even though that portion of the motion was not granted, R.J.O. is now prevented from challenging the validity of service by failing to include this objection in its previous Rule 12 motion. Finally, it is of no consequence that the actions of the defendant that resulted in a waiver occurred after the entry of default. *See Bally Export Corp.*, 804 F.2d 398.

In *J. Slotnik Co. v. Clemco Indus.*, 127 F.R.D. 435 (D.Mass.1989), the court discussed at length the issue of waiver under Rule 12 and its relation to default judgment. The court there held that the defendant's filing of its answer with a motion to remove default judgment was its "first defensive move." *Id.* at 440. Although that court placed greater emphasis on the filing of the answer than on the motion, the Seventh Circuit has held that filing a defensive motion is sufficient to demonstrate waiver under Rule 12(h). *See Lowery*, 924 F.2d at 733 (citing with approval *J. Slotnik Co.*); *see also In re State Exchange Finance Co.*, 896 F.2d 1104 (7th Cir.1990)

(holding that defendant waived right to challenge validity of process, stating: "Neither in the motion to set aside the default nor in the answer to the complaint did [the defendant] raise the issue of personal jurisdiction. He raised it for the first time at the hearing at which the bankruptcy judge denied the motion to set aside the default. This was too late."). As a result, according to Rule 12(h)(1)(A), every defense not included in R.J.O.'s February 21 Motion was waived. As that motion did not question the validity of service, R.J.O. waived its right to contest on that ground.

Arguing against waiver, R.J.O. claims that it did not have the information necessary to challenge the validity of service until April 8, 1991, when it received a copy of the summons, several weeks after the court's order denying the motion to set aside the entry of default. Thus, it asserts that it could not have knowingly waived its right to challenge the validity of the summons.

This argument is without merit for two reasons. First, the summons was available to R.J.O. long before April 8 and even before the February 1, 1991 hearing. Indeed, at that hearing, counsel for R.J.O. stated to this court that R.J.O. had received the return of service the week of February 1, and acknowledged that the return of service had been filed with the court the week before. Yet at neither the February 1 default hearing nor in their February 21 motion did R.J.O. challenge the validity of the summons. Rather, R.J.O. argued only that it believed in good faith that it had never been served.[4] Despite possession of the summons for several weeks, R.J.O. did not assert the alleged defects in the summons as grounds for vacating.

Furthermore, the defects in the summons presently asserted by R.J.O. were, in large part, fully discernable from information R.J.O. had in hand.[5] Except for the

---

**4.** R.J.O.'s attorney made the following statement:

[The return of service] has been filed this week—I'm sorry, last week, this return of service.... [I]f [service] has been obtained properly, Judge, we'll submit to the jurisdic-

tion of the Court, file and appearance and answer within 28 days.

Transcript of Proceedings of February 1, 1991, at 4.

**5.** The alleged defects include: the fact that the named defendant on the summons is "The Sage

fact that the summons and complaint were FAXed, all the defects were ascertainable on the face of the summons in the proof of service, which was filed January 23. In fact, the attorney for R.J.O. admits as much.[6] R.J.O. was fully capable of discovering the alleged defects long before April 8.

R.J.O.'s argument is without merit for a second reason. With full knowledge that it was being sued in this case,[7] R.J.O. sat back and did nothing even though it "had at its disposal the means to resolve all doubts about service *by making an appropriate motion." O'Brien*, 136 F.R.D. at 154 (emphasis added). Had it done so, R.J.O. would not have been defaulted and it would have been able to examine a copy of the proof of service. Thus, it would have had the opportunity to contest the validity of the summons. "By failing to take affirmative steps to protect its rights, R.J.O. took the risk that service had been made ... and that its failure to respond to the summons would result in default." *Id.* Thus, R.J.O.'s argument that it was unable to contest the validity of service until its April 8 examination is plainly without merit. *Accord Pusey*, 938 F.2d at 501 (defendant held to have waived personal jurisdiction defense because on inquiry notice and constructive knowledge of filing date after received copy of complaint).

R.J.O. then contends that its questioning of whether it was even served preserved the issue of the validity of the summons. However, in R.J.O.'s February 21 motion, it no longer questioned the fact of service.

Even assuming, *arguendo*, that the issue had been preserved by questioning service, the validity of the summons issue would only be preserved so long as the question of whether R.J.O. was served remained an issue. Here, when the service question was abandoned in the February 21 motion, so too was the validity of summons argument abandoned. *S.E.C. v. Cherif*, 933 F.2d 403, 416 (7th Cir.1991) (failure to timely assert deficient service of process argument resulted in waiver of argument).

## II.

■ R.J.O. next asks this court, pursuant to Rule 55(c), to reconsider and vacate its ruling of March 28, 1991. Presumably, R.J.O. is also seeking vacation of the February 1, 1991 entry of default as well. Under Rule 55(c), in order to have the judgment set aside, the defendant must show: "(1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir.1989). R.J.O.'s reasons for reconsideration include the allegation that the summons was defective and defense counsel's excusable neglect. However, as noted above, these objections could have been presented previously had R.J.O. not stood by during the pendency of this case. Thus, defense counsel's neglect is not excusable, and but for this neglect, the alleged defects in the summons would have been discovered earlier. *See In re Kilgus*, 811 F.2d 1112, 1118 (7th Cir.1987) (court upheld default where defendant, relying

---

Group, Inc., et al."; the lack of a time period within which the defendant was required to answer the complaint; and that the summons was FAXed and thus lacked an official court seal. It is unclear that these alleged defects are sufficient to invalidate service. *See Sanderford v. Prudential Ins. Co. of Amer.*, 902 F.2d 897 (11th Cir.1990) (omitting days within which defendant must respond to complaint does not prevent court from exercising personal jurisdiction over defendant where defendant was not prejudiced and knew of the pendency of the case); *United Food & Commercial Workers' Union v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir. 1984) (misstating days within which to respond was not grounds for dismissal); *see also Vega Matta v. Alvarez de Choudens*, 440 F.Supp. 246 (D.P.R.1977) (failure to name all defendants on

summons did not require dismissal, in absence of prejudice to the defendant), *aff'd sub nom.*, 577 F.2d 722 (1st Cir.1978).

6. Page seven of R.J.O.'s February 21 Motion states: "the deficiencies in the summons have just been uncovered by counsel for R.J.O. after being compelled to contact the special process server. (citation omitted) While certain defects appear on the face of the summons, their existence eluded all of the parties...."

7. R.J.O. states that it knew the case was pending and it was named as a defendant shortly after the action was filed in Washington state. R.J.O.'s February 21 Motion, at 5.

entirely on a claim that service was invalid, refused to appear, but did not deny having actual notice of the cross-claim, the motion for the default judgment, and the date of the hearing). Therefore, the court denies the motion to reconsider its ruling on March 28, 1991.

### III.

R.J.O.'s third ground for relief seeks the vacation of the order of March 28, 1991, pursuant to Federal Rule of Civil Procedure 60(b). This test is the same as under Rule 55(c), but is more strictly applied in the context of Rule 60(b). *Di Mucci*, 879 F.2d at 1495. R.J.O.'s argument under this rule is just a rehashing of its previous arguments. R.J.O.'s motion states: "1. On April 8, 1991, R.J.O. became aware of new facts which demonstrate that R.J.O. was never served with a proper summons and complaint. This fact clearly constitutes new evidence within the purview of Federal Rule of Civil Procedure 60(b)." *See* R.J.O.'s February 21 Motion, at 11. However, had R.J.O. made the motion that the court has previously suggested, this "new" evidence would have been available. Furthermore, the alleged defects in the summons were certainly available to R.J.O. as of January 25, 1991, when the plaintiff finally filed its proof of service. R.J.O.'s reasons for not raising this issue at the February 1 hearing, within its motion filed on February 21, or even at the March 22, 1991 hearing, fully seven weeks after the information was on record, are insufficient.

R.J.O.'s second grounds for the 60(b) motion is its "excusable neglect and/or inadvertence." R.J.O. then incorporates its argument under rule 55(c). However, as the test under Rule 55(c) is more easily met (*see Di Mucci*, 879 F.2d at 1495), R.J.O.'s failure to meet that test, demonstrates conclusively that it cannot meet the more stringent test under 60(b). Therefore, the court denies R.J.O.'s Rule 60(b) motion as well.

---

**8.** When an investor, or speculator, purchases a "put," that person has "an option to sell a specified amount of a security (as a stock) or commodity (as wheat) at a fixed price or within a specified period of time." Webster's Ninth New

### IV.

R.J.O.'s fourth ground for relief is more troublesome. Here, R.J.O. asks the court to vacate its award of damages and to set a hearing to determine actual damages (alleged to be either zero or $9,000), or to limit damages to the amount sought in the complaint (alleged to be $20,000). Pursuant to the plaintiff's motion and the March 22, 1991 hearing, the court awarded damages in the amount of $40,000 plus interest.

### A.

■ First, R.J.O. asserts that plaintiff's judgment must be limited to actual damages which it claims are either zero or $9,000. It arrives at this number by subtracting the published high price for July Silver puts [8] on April 28, 1987, which was $11.00, from the price at which plaintiff's July Silver puts were purchased on that day, which was $20.00, and multiplying the difference by 1000, the number of puts purchased. Thus, had the puts been purchased at $11.00, the plaintiff would have suffered losses of only $11,000 rather than $20,000. Therefore, R.J.O. concludes, the alleged fraud only resulted in $9,000 in damages to the plaintiff.

In the alternative, R.J.O. asserts that the actual high price for the puts on April 28, 1991, was $20.00, and therefore, plaintiff's damages were zero. In the event that the court rejects both of these arguments to limit damages to zero or $9,000, R.J.O. asks the court to limit damages to $20,000. It asserts that that is the amount plaintiff sought in his complaint.

■ R.J.O. fails to realize that where a broker commits fraud in the purchase and sale of commodities, the defrauded party can recover the amount *lost* on the fraudulent transactions, not just the difference between the price the investor would have paid (had the transaction been properly performed) and the amount for which the commodities were fraudulently sold. *See Hanly v. Commodity Option Specialists, Inc.*, CFTC No. 89–R221, 1990 WL 294049

Collegiate Dictionary 958 (1985); *see also Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 342 n. 7 (N.D.Ill.1978) (quoting L. Rosen, How to Trade Put and Call Options 109 (1974)).

.

(CFTC Aug. 6, 1990) (speaking to out of pocket losses). Thus, the court rejects R.J.O.'s damage calculation of zero and $9,000, and holds that the plaintiff here may recover the full amount lost as a result of the R.J.O.'s conduct.

## B.

■ The question then becomes whether the plaintiff can recover $20,000 or $40,000. Because plaintiff's complaint is inartfully drafted, this is no easy task. However, after careful review, the court agrees that R.J.O.'s assertion that the complaint only seeks $20,000 from R.J.O. is correct.

Plaintiff's complaint is separated into three parts. Part I is an introductory section that identifies the parties. Part II ("Count I") names two defendants, neither of which is R.J.O., and seeks recovery of $40,000 based on four disputed transactions.[9] One of the transactions in Count I is the purchase of July Silver puts on April 28, 1987. As for the legal grounds for recovery, Count I sets forth two federal statutes and three common law causes of action. Finally, Count I seeks attorney's fees.

In Part III ("Count II"), plaintiff names R.J.O. as a defendant. For the sake of clarity, that count is included below.

The plaintiff herein incorporates the above allegations as contained in paragraphs 1.0 through 11.0. [Parts I & II]. 12.0 *Order to Purchase $6.00 July Silver Puts.* The plaintiff through his agent, The Sage Group, Inc. and Bruce Serra and through subagents, R.J. O'Brien & Associates and their agent, Barnes & Company and the Comex Floor Brokers, John Doe Courtney and John Doe Caracata, filled the above stated purchase option order $9.00 per once [sic] above the high trade price for April 28, 1987. Such conduct violates 7 U.S.C., Section 6b as indicated above it constitutes a breach of fiduciary responsibility, misrepresentation, and fraud and deceit.

13.0 *Damages.* Plaintiff pursuant to the conduct of the named defendants in paragraph 11.0 through 13.0, suffered monetary loss of approximately $20,-000.00, the exact amount shall be proved at trial.

14.0 *Attorneys' Fees and Expenses.* Plaintiff's attorneys' fees and expenses should be covered by the defendants under these proceedings.

WHEREFORE, the plaintiff prays for relief as follows:

1. For a judgment for plaintiff['s] actual damages as indicated above and which shall be proved at trial.

2. For a judgment for plaintiff's reasonable attorneys fees and expenses.

3. For other and just equitable relief.

*See* Plaintiff's Complaint at 8–9.

From this it seems clear that Count II seeks only $20,000 plus attorney's fees. Indeed, that is the amount requested in the *ad damnum* clause, Paragraph 13.0. Nevertheless, plaintiff argues that by including, by reference, paragraphs 1.0 through 11.0, he has sought $40,000. Paragraphs 1.0 through 11.0 include the introductory section as well as Count I, which discusses all four disputed transactions.

The court disagrees. The plaintiff has brought suit to contest four transactions. Only one of these transactions was referred to explicitly in Count II and this is the only count that mentions R.J.O. All four transactions were referred to in Count I, including the July Silver puts purchase mentioned in Count II. If the plaintiff wanted to recover from R.J.O. on the three other transactions discussed in Count I, he would have named R.J.O. as a defendant in Count I. Furthermore, if he really intended to include paragraphs 1.0 through 11.0 in Count II, plaintiff's discussion of the July Silver puts in paragraph 12.0 would be redundant of paragraph 7.4, the paragraph in Count I that discussed the July Silver puts.

In addition, plaintiff's argument that he sought $40,000 in Count II defies logic. If

---

**9.** The disputed transactions include:
1. A crude oil put option with a cost of $13,300.
2. An S & P 500 call spread option with a cost of $5,750.
3. A T–Bond call option with a cost of $3,600 and a commission of $1,870.
4. The silver put option with a cost of $20,-000 and a commission of $2,500.

plaintiff's assertion that he incorporated the first count in the second count were correct, then he would be seeking recovery of the $40,000 sought in Count I's *ad damnum* clause (paragraph 10.0) in addition to the $20,000 sought in Count II (paragraph 13.0), for a grand total of $60,000. As plaintiff only had $40,000 to invest, it would be frivolous to seek damages $20,000 in excess of the amount plaintiff actually lost. Therefore, the only reasonable conclusion is that Count II sought only $20,000 from the defendants named therein. This would be consistent with the fact that the second count specifically addressed only one transaction—which involved the loss of $20,000.

However, the question then becomes whether after entry of default a plaintiff can seek more damages then he asked for in his complaint. Rule 54(c) states that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in *the demand for judgment.*" (emphasis added). It has been held that this language refers to the amount requested in the *ad damnum* clause of the complaint. *See Atlanta Gas Light Co. v. Semaphore Advertising, Inc.*, 747 F.Supp. 715, 719 (S.D.Ga.1990) (no damages allowed in excess of that in complaint); *Marina B Creation S.A. v. de Maurier*, 685 F.Supp. 910, 912–13 (S.D.N.Y.1988) (no damages allowed in excess of that demanded in complaint, especially where notice and motion for default did not notify other party of increase in damages sought). Therefore, the court holds that after default the plaintiff cannot seek more than it requested in its complaint, which in the case of this defendant was $20,000.

## CONCLUSION

The court denies the motion to dismiss for lack of in personam jurisdiction, the motion to vacate void judgment, and the motion for attorney's fees, but grant's R.J.O.'s motion to the extent that the court reduces the amount of the default judgment to $20,000.

IT IS SO ORDERED.