David W. PETERSON and Susan
Peterson, Plaintiffs,

v.

James Allen BALOUN and James Allen
Baloun & Co., Ltd., an Illinois
corporation, Defendants.

No. 88 C 2077.

United States District Court,
N.D. Illinois, E.D.

June 19, 1989.

Jeffrey Lawrence, Kelley and Associates, Schaumburg, Ill., for plaintiffs.

Kurt A. Richter, James R. Truschke & Associates, P.C., Arlington Heights, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

The plaintiffs in this case, David and Susan Peterson ("the Petersons"), filed a seven-count complaint alleging that defendants' fraudulent conduct induced them into investing in a venture in which they lost over $50,000. In response to the Petersons' allegations, defendants James Allen Baloun ("Baloun") and James Allen Baloun Company, Ltd. ("Baloun Company") have submitted a "motion to strike" the complaint. Defendants' motion, however, exceeds the proper scope of a motion to strike. Rule 12(f) of the Federal Rules of Civil Procedure provides: "Motion to Strike ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Only one of defendants' arguments—their contention that paragraphs eleven and twelve of the complaint should be stricken for being irrelevant and immaterial—concerns matters addressed by Rule 12(f). The remainder of defendants' arguments do not assert that the Petersons' complaint contains any redundant, immaterial, impertinent or scandalous matter. Instead, defendants' arguments attack the merits of the Petersons' claims.

Some of these arguments—those which challenge the sufficiency of the allegations in the complaint—should be raised in a motion to dismiss. The rest of defendants' arguments—those which depend on matters outside the pleadings—are more properly raised in a motion for summary judgment. Counsel for defendants, however, throws all of these arguments together in a purported "motion to strike."[1] Moreover, defendants' counsel supports his motion with an excessively lengthy brief without having received court permission to do so. The court does not look kindly on counsel's disregard for the Federal Rules or the local rules of this district. Nevertheless, in the interest of judicial economy, this opinion will address all of the arguments raised in defendants' "motion to strike."

## FACTS

To address defendants' arguments concerning the sufficiency of the complaint, the court must treat defendants' motion as a motion to dismiss. *See Professional Asset Management, Inc. v. Penn Square Bank,* 566 F.Supp. 134, 136 (W.D.Okla. 1983); *Golaris v. Jewel Tea Co.,* 22 F.R.D. 16, 17 (N.D.Ill.1958). In doing so, the court is bound to accept as true the following factual allegations made by the Petersons. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987).

In February 1986, David Peterson terminated a long-standing business association in which he had been involved and began seeking a new business opportunity. Specifically, Peterson began searching for an opportunity to own his own business. Between May 10 and May 15 in 1986, Peterson met with Baloun on several occasions. Since 1983, the Petersons had employed Baloun as their accountant, tax preparer, and investment adviser. Peterson expressed to Baloun his plans to seek a new business pursuit. In response, Baloun informed Peterson that he could offer Peterson a business opportunity superior to any other which Peterson was considering. Baloun proposed that Peterson invest in a new mortgage company called "Woodfield Mortgage Co." ("Woodfield"). Woodfield was incorporated in Illinois on December 9, 1985. Baloun was an officer and director of Woodfield and its majority shareholder. Baloun proposed that Peterson buy shares in Woodfield and help run the company as vice president.

The Petersons claim that Baloun intentionally misled them to induce them into investing in Woodfield. Specifically, the Petersons allege that Baloun deceived them by (1) misrepresenting that he had knowledge of the mortgage banking industry by virtue of his "founding" of "one of the most successful start-ups in mortgage banking history," a company called "First Western Mortgage Company;" (2) failing to disclose that he lacked sufficient operational experience in the mortgage banking industry to be the chief executive officer of a mortgage company; (3) exaggerating the amount of his capital contribution to Woodfield by claiming that he had contributed specially adapted computer software systems worth over $150,000, when in fact these systems were not specially designed and were worth significantly less than what Baloun claimed; (4) exaggerating the personal financial gain which Peterson could expect from his investment in Woodfield; (5) understating Woodfield's risk of undercapitalization. The Petersons claim that these misrepresentations by Baloun caused them to invest $50,000 in Woodfield. They paid $10,000 to Baloun Company on June 29, 1986, and $40,000 to Woodfield on July 23, 1986. On January 8, 1988, Woodfield filed for bankruptcy and, according to the Petersons, the company is now insolvent. The Petersons claim their interest in the company is now worthless.

Based on their allegations, the Petersons assert several claims. In Count I of their complaint, the Petersons claim that defendants violated the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1982); the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1982); and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R.

---

**1.** Perhaps the disjointed nature of defendants' motion is the reason why Magistrate Gottschall has failed to resolve this matter while it has remained pending before her for almost a year.

§ 240.10b–5 (1987). In Count II, the Petersons allege that defendants violated § 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982). Counts III through VII contain pendent state claims. Count III alleges a violation of Illinois' securities laws; Count IV asserts a common law fraud claim; Count V sets forth a claim for breach of trust; Count VI alleges a negligent misrepresentation claim; and Count VII asserts a claim for punitive damages.

Defendants raise numerous arguments attacking each count of the complaint. This court will address defendants' arguments as if they had been brought in their proper procedural posture.

## DISCUSSION

### I. *Motion to Strike*

■ Paragraphs eleven and twelve of the Petersons' complaint read as follows:

11. In June, 1987, Baloun and Woodfield Mortgage were sued for fraud by the Attorney General of Illinois, because of Woodfield's failure to honor loan commitments.

12. On January 8, 1988, Woodfield Mortgage Co. filed a Voluntary Petition under Chapter 7 of the Bankruptcy Act. (Case No. 88 B 207, U.S.Bk.Ct., N.D.Ill.). The corporation is now insolvent, and plaintiffs' shares were and are now worthless.

Defendants argue that these allegations should be stricken for being immaterial, irrelevant, and prejudicial to defendants. Both of these allegations, however, concern the value of the Petersons' investment. Therefore, these allegations are directly related to the amount of damages allegedly suffered by the Petersons, which is certainly relevant to this case. Accordingly, paragraphs eleven and twelve will not be stricken. *See von Bulow By Auersperg v. von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987) (allegations should not be stricken unless they have no possible bearing on the subject matter).

### II. *Motion to Dismiss*

#### A. Susan Peterson

■ Defendants maintain that plaintiff Susan Peterson should be dismissed from the case entirely because the complaint is void of any allegation that she ever met with Baloun, relied on any of the statements Baloun allegedly made, or suffered damages. All of the allegations, defendants argue, pertain to Mrs. Peterson's husband, David Peterson. The court rejects this argument. The complaint alleges that the Petersons, together, purchased the Woodfield stock from defendants, and that they relied on defendants' misrepresentations in making the investment. While the complaint does not assert that Mrs. Peterson ever met with Baloun, the Petersons' allegations, read in the light most favorable to them, sufficiently claim Baloun intended for both Mr. and Mrs. Peterson to rely on his misrepresentations in making their investment in Woodfield. Under these circumstances, both Mr. and Mrs. Peterson can recover. Mrs. Peterson does not have to allege face-to-face dealing with defendants. *See, e.g., Sargent v. Genesco, Inc.*, 492 F.2d 750, 761 (5th Cir.1974) (rejecting privity requirement for recovery under Rule 10b–5).

#### B. COUNTS I, III, & IV: Federal Securities Fraud, Illinois Securities Fraud, Common Law Fraud

■ Defendants raise a number of arguments challenging the Petersons' fraud claims. Defendants first argue that the Petersons' fraud claims should be dismissed because they lack the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Defendants contend that the Petersons fail to satisfy Rule 9(b) because their allegations do not state with particularity the nature of the alleged fraud or the time and place it was committed. The court, however, finds that the Petersons' fraud claims are sufficiently specific. The complaint does not need to set forth every evidentiary detail; it must simply describe the alleged fraud with enough specificity to permit adequate responsive pleading by the defendants. *See*

*Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975) (requiring only "bare bones" of fraudulent scheme to be alleged to satisfy the requirements of Rule 9(b)). *See also Ambling v. Blackstone Cattle Co., Inc.,* 658 F.Supp. 1459, 1468–69 (N.D.Ill.1987). The Petersons have identified the particular time frame in which the fraud was committed—a six-day span in May of 1986. The Petersons also have specifically described the content of the misrepresentations and omissions allegedly made by Baloun. These allegations are sufficient to permit adequate responsive pleading by defendants. Therefore, the Petersons have satisfied the requirements of Rule 9(b).

■ Defendants also argue that the Petersons cannot base their Illinois securities claims on Baloun's alleged statements regarding the expected return on the Petersons' investment. Defendants claim that these statements simply amount to "puffing" on the part of Baloun and, consequently, the statements are not actionable. Illinois courts, however, have clearly rejected this position. *See Jenkins v. Dearborn Securities Corp.,* 42 Ill.App.3d 20, 355 N.E. 2d 341, 345 (1976); *Norville v. Alton Bigtop Restaurant, Inc.,* 22 Ill.App.3d 273, 317 N.E.2d 384, 389–90 (1974). Therefore, the court finds no basis for defendants' argument.

■ Defendants further argue that the Petersons' common law fraud claim is defective in that it seeks recovery for defendants' alleged promises regarding future events. Defendants base this argument on the traditional rule permitting recovery for misrepresentations concerning past or existing events but barring recovery for fraud based on promises relating to future events. *See Sinclair v. Sullivan Chevrolet Co.,* 31 Ill.2d 507, 202 N.E.2d 516 (1964). However, an exception to the general rule is that where the promise relating to the future event is used to perpetrate the fraud, recovery based on that promise is permitted. *Perlman v. Time, Inc.,* 64 Ill. App.3d 190, 20 Ill.Dec. 831, 836, 380 N.E.2d 1040, 1045 (1978); *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977). In the instant case, the Petersons allege that Baloun used the promises regarding future profits to fraudulently induce them into investing in Woodfield. These fraud allegations clearly fall within the exception. Thus, the Petersons can maintain their fraud claim based on Baloun's fraudulent representations concerning profit expectations.

■ Defendants also argue that the Petersons' request for punitive damages under Counts I and III should be dismissed because punitive damages are not recoverable based on these claims. Defendants are correct in maintaining that Illinois securities law does not provide a remedy of punitive damages. *See Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Insurance Co.,* 698 F.2d 320, 324 (7th Cir.1983); *Disher v. Information Resources, Inc.,* 691 F.Supp. 75, 84 (N.D.Ill. 1988). In addition, the Petersons concede that punitive damages are not recoverable based on federal securities claims. Therefore, the Petersons' prayers for punitive damages under Counts I and II will be dismissed.

### C. *Count II: RICO*

■ Although defendants make two separate arguments with respect to the Petersons' RICO claim, the court only needs to focus on one aspect of RICO to dispose of Count II—the pattern of racketeering requirement. To sufficiently set forth a civil RICO claim, the Petersons cannot simply allege that defendants committed certain racketeering acts. The Petersons are not entitled to recover under RICO unless the fraudulent acts that they allege defendants committed amount to a "pattern" of racketeering. *See* 18 U.S.C. § 1962.

■ In determining whether a pattern of racketeering has been pled, the court must examine the specific factual allegations in the complaint. *Brandt v. Schal Associates, Inc.,* 854 F.2d 948, 952 (7th Cir.1988). A pattern of racketeering only exists where the facts show that there is "continuity plus relationship" among the racketeering acts. *Sedima, S.P.R.L. v. Imrex*

*Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). Whether "continuity plus relationship" exists, however, is not always readily apparent. As noted by the Seventh Circuit in *Morgan:*

> ... the terms "continuity" and "relationship" are somewhat at odds with one another. Relationship implies that the racketeering acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. Continuity, on the other hand, would embrace predicate acts occurring at different points in time or involving different victims. To focus excessively on either continuity or relationship effectively negates the remaining prong.

804 F.2d at 975. Nevertheless, the Seventh Circuit has made clear that in order to satisfy the continuity prong of the test, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.,* transactions somewhat separated in time and place." *Id. See also Brandt,* 854 F.2d at 952; *Medical Emergency Service Associates v. Foulke,* 844 F.2d 391, 395 (7th Cir.1988). In line with this requirement, the court has consistently held that where multiple fraudulent acts are committed in furtherance of a single episode of fraud that involves one victim and relates to one basic transaction, the racketeering activity is not sufficiently continuous to constitute a pattern of racketeering. *See Brandt,* 854 F.2d at 952–54; *SK Hand Tool Corporation v. Dresser Industries, Inc.,* 852 F.2d 936, 940 (7th Cir.1988); *Medical Emergency,* 844 F.2d at 396–98; *Tellis v. U.S. Fidelity & Guaranty Co.,* 826 F.2d 477, 479 (7th Cir.1986); *Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 818 (7th Cir.1987); *Marks v. Pannell Kerr Forster,* 811 F.2d 1108, 1112 (7th

Cir.1987); *Elliott v. Chicago Motor Club Ins.,* 809 F.2d 347, 350 (7th Cir.1986).

The instant case fits into the above category. The Petersons allege that defendants committed several fraudulent acts in furtherance of a single fraudulent scheme. The sole objective of the scheme was to induce the Petersons into investing in Woodfield. In addition, defendants' conduct related to one basic transaction. The court rejects the Petersons' contention that defendants' alleged fraud involved two separate transactions because the Petersons made separate payments to defendants on June 29, 1986, and July 23, 1986. This argument mischaracterizes the dealings between the parties. Both of the Petersons payments were made pursuant to a single agreement with defendants to invest in Woodfield. The Petersons made these payments over a short period of time and as a result of the same fraudulent acts which defendants allegedly committed. Under these circumstances, the court cannot fairly view the Petersons' payments as separate transactions. The parties' dealings are more properly characterized as relating to one basic transaction—the Petersons' purchase of an interest in Woodfield. Therefore, this case falls squarely in line with the class of cases in which the Seventh Circuit has determined that no pattern of racketeering exists. Accordingly, the Petersons' RICO claim must be dismissed.

### III. *Motion For Summary Judgment*

Defendants make two arguments in which they rely on material outside the pleadings to challenge the merits of the Petersons' claims. These arguments must be treated as requesting summary judgment. Fed.R.Civ.P. 12(b).[2]

### A. David Peterson's Sophistication

 Defendants argue that the Petersons are barred from recovery on several of their claims due to the intelligence, experience, and background of David Peterson.

---

**2.** Under Rule 12(b), where the court treats a motion to dismiss as one for summary judgment by considering matters offered by the movant outside the pleadings, the party opposing the motion must be given a reasonable opportunity to present his own outside material in

opposition to the motion. Since the court finds defendants' arguments meritless, however, it is unnecessary to provide the Petersons with that opportunity. *See Arden v. Village of Oak Lawn,* 537 F.Supp. 181, 184 n. 6 (N.D.Ill.1982).

Defendants claim that Mr. Peterson's sophistication prevented the Petersons from reasonably relying on the misrepresentations allegedly made by Baloun. Therefore, defendants maintain that the Petersons fail to satisfy the reasonable reliance component of their claims for federal securities fraud (Count I), Illinois securities fraud (Count III), common law fraud (Count IV), breach of trust (Count V), and negligent misrepresentation (Count VI).

Defendants offer virtually nothing, however, to support their argument. The only "substantive" material on which defendants rely is contained in the purported resume of Mr. Peterson, which defendants have submitted with their motion. Even if this is an accurate resume of Mr. Peterson, it does not support defendants' position. The court cannot possibly hold that as a matter of law the Petersons were barred from reasonably relying on Baloun's misrepresentations simply because Mr. Peterson has held several responsible corporate positions and possesses an M.B.A. Nor can the court rule in defendants' favor based on their bald, unsupported assertions that Mr. Peterson is a "savvy businessman" and a "sophisticated investor" who should have known better than to rely on Baloun's misrepresentations. Therefore, defendants' argument that the Petersons could not have reasonably relied on Baloun's misrepresentations is easily rejected.

B. The Liability of Baloun Company

■ Defendants contend that Baloun Company cannot be liable for Baloun's alleged misrepresentations to the Petersons because the company was not incorporated until several months after the misrepresentations and reliance thereon allegedly took place. According to the complaint, Mr. Peterson met with Baloun between May 10 and May 15 in 1986, and the Petersons purchased the Woodfield shares on June 29 and July 23 that same year. Defendants have submitted Baloun Company's articles of incorporation, which they claim show

that Baloun was not incorporated until December 26, 1986. Defendants argue that these documents conclusively establish that Baloun Company was not a party to the Petersons' Woodfield transaction. Therefore, defendants request the court to find that Baloun is not liable as a matter of law on any of the Petersons' claims.

■ Even assuming, however, that the documents submitted by defendants establish conclusively that Baloun Company was not incorporated until after the fraud had occurred, the company can still be liable on the Petersons' claims. The Petersons' allegations, read in the light most favorable to them, assert that Baloun held himself out as acting not only on his own behalf, but also in the name of Baloun Company when he lured the Petersons into investing in Woodfield.[3] Under these circumstances, Baloun Company cannot use its lack of legal incorporation to escape liability. When persons hold themselves out as acting on behalf of a corporation and do business as such, they cannot later assert the lack of technical incorporation as a defense to corporate liability. 8 W.M. Fletcher, Cyclopedia of the Law of Private Corporations, §§ 3930–3932 (1982 Revised Edition). *See Watwood v. Barber*, 70 F.R.D. 1, 9–10 (N.D.Ga.1975). *Cf. Loewen–America Distributing Co. v. Advance Distributing Co., Inc.*, 705 F.2d 311, 313–14 (8th Cir. 1983). In such a case, a constructive corporation is formed which is liable for the misconduct of its agents. *Watwood*, 70 F.R.D. at 10. Therefore, defendant Baloun Company will not be dismissed from this case.

Defendants have also urged the court to assess sanctions against the Petersons pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants argue such sanctions are warranted because the Petersons unjustifiably named Baloun Company as a defendant. Given the court's rejection of defendants' argument that Baloun Company should be dismissed, defendants' request for Rule 11 costs and fees based on

---

**3.** For instance, the Petersons allege that they paid $10,000 to Baloun Company—not to Baloun—on June 29, 1986.

that argument is summarily denied. More-over, in light of the extra work which defendants' motion has generated not only for the Petersons' counsel but also for this court, perhaps defendants' counsel should not have been so quick to draw the court's attention to Rule 11. Counsel might be taken aback at the court's application of the rule to this case if he continues to disregard the procedural rules of this court.

### CONCLUSION

For the foregoing reasons, defendants' motion is denied, with the following exceptions:

(1) Count II is dismissed;

(2) The prayers for punitive damages in Counts I and III are dismissed.

IT IS SO ORDERED.