10 F.3d 1293
 27 Fed.R.Serv.3d 1284
 CONTINENTAL BANK, N.A., formerly known as Continental
Illinois National Bank & Trust Company of Chicago,
Plaintiff-Appellee,
v.
Andrew C. MEYER, Jr., Nancy M. Lubin, as Administratrix of
the Estate of Donald M. Lubin, and Philip J.
Crowe, Jr., Defendants-Appellants.
 No. 91-3476.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 8, 1992.
Decided Dec. 1, 1993.
 
 Stephen Novack, Bruce Braverman (argued), Eric N. Macey, Novack & Macey, Lester Stone, Thomas D. Sullivan, Robert D. Hughes, Stone & Hughes, Chicago, IL, for plaintiff-appellee.
 Joanne A. Sarasin (argued), Stuart M. Widman, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, for defendants-appellants.
 Before CUMMINGS and BAUER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 In 1984, Continental Bank lent funds to Andrew C. Meyer, Jr., Donald M. Lubin and Philip J. Crowe, Jr. to invest in a horse-breeding limited partnership. In 1988, the bank sued each of these individuals to recover on the unpaid renewal notes. In July 1989, the actions were consolidated and the bank filed an amended consolidated complaint against all defendants.[1] The defendants filed an answer including several affirmative defenses. The district court struck all the defenses, but gave leave to amend the defense based on fraud. The defendants amended that defense and added another ("aiding a fraud") and a two-count counterclaim. The court dismissed the counterclaim and struck the affirmative defenses. The bank moved for summary judgment, and the defendants responded solely by challenging personal jurisdiction. The court found the defendants' active participation in the litigation for two-and-a-half years constituted a waiver of the personal jurisdiction defense and granted summary judgment. The court additionally allowed for substitution of the administratrix of defendant Lubin's estate in place of the deceased Lubin, discussed more fully below. The defendants now appeal. We affirm.
 
 I. BACKGROUND
 
 2
 On appeal, we address whether the district court properly struck the defendants most recent affirmative defenses and dismissed the counterclaims. We draw on defendants' pleading for the facts.
 
 
 3
 The three defendants were partners in a law firm in Massachusetts. They invested in and became limited partners in Sunrise Farm Breeding Partnership No. 3, operating in Illinois. The general partners were Charles Schmidt and Edward Zurek. The bank had financed two similar partnerships, Sunrise No. 1 and No. 2. Lubin and Meyer had invested in No. 2. The purpose of the partnership was "to breed world class and champion thoroughbred stallions to proven stakes brood mares with internationally recognized pedigrees so as to breed world class thoroughbred yearlings which would be sold at a profit."
 
 
 4
 Defendants' pleading is not very specific as to what happened. We gather that each defendant borrowed $200,000 from the bank and invested that amount. The breeding program is said to have "failed." It seems reasonable to assume that defendants claim they received no profits and their interests became valueless because in their counterclaim they seek to recover the part of the loans they had repaid, and their affirmative defenses sought to prevent the bank recovering the unpaid balances. Their allegations of information the bank failed to reveal suggests a claim that the failure was caused by Schmidt's selling to the partnership stallion breeding seasons which he owned for excessive fees and without arm's length negotiation. Other allegations suggest that the mares were not of good quality or value.
 
 
 5
 The claim of fraud includes alleged oral representations by a bank officer and failure to inform defendants of other facts, including untruths in a Private Placement Memorandum prepared by the General Partners, and approved by the bank officer and attorney. The representations were made before the defendants borrowed the money or the partnership began to operate.
 
 
 6
 The oral representations alleged, as summarized in appellants' brief, were "that Sunrise No. 3(1) was structured so as to make a profit, (2) was a 'risk free' investment, (3) had highest quality horses, and (4) was managed by competent General Partners."
 
 
 7
 The alleged omissions were failures to say (1) that Schmidt would personally sell stallion seasons to the partnership, (2) that the partnership "was structured primarily to benefit the Bank and the General Partners," and failures to correct statements in the Private Placement Memorandum, (3) that the bank had investigated the partnership when it had not, (4) that Zurek was the owner of a particular farm in Kentucky, when he was not, and (5) that the bank had committed to fund the investments of limited partners based solely on the value of the horses and foals, when in fact it also relied on the credit of the investors.
 
 
 8
 The pleading did not allege that the bank had a duty to disclose to defendants the matters allegedly omitted or to correct the allegedly untrue statements in the Memorandum.
 
 
 9
 The district court concluded that the defendants had failed to allege that the bank made any false statements of fact, as required for fraud under Illinois law. Instead, the court determined that the bank's representations were only opinions. The district court further decided that the defendants had not pled scienter with the required specificity. The district court also found that the defendants had failed adequately to plead loss causation. For these reasons, the court struck the defendants' fraud defense and dismissed the fraud count of the counterclaim.
 
 
 10
 In the second affirmative defense and second count of the counterclaim, defendants alleged that the bank assisted Schmidt and Zurek in their scheme to defraud defendants and other limited partners. The bank's motive allegedly was to help Schmidt and Zurek repay their own debts to the bank. They alleged that Zurek orally made misrepresentations to defendants concerning the structuring of the partnership and the quality of the horses, and made representations in the Private Placement Memorandum somewhat similar to the representations already referred to. The bank people allegedly knew of the representations and omissions, and knew they were false or had been made with reckless disregard of their truth. It was alleged that the bank assisted Schmidt and Zurek in perpetrating the fraud by "endorsing" Sunrise No. 3, confirming that Zurek's statements were correct, and failing to give information omitted by Schmidt and Zurek.
 
 
 11
 The district court struck the second affirmative defense and dismissed the second count of the counterclaim. The district judge's first reason was that they were not timely filed, noting defendants' admission that the "aiding a fraud" theory is "simply a new legal theory which arises out of the same facts of which Plaintiff [sic] has always been aware." She also concluded that defendants did not sufficiently allege that the bank benefitted from the fraud.
 
 
 12
 The bank then moved for summary judgment, and the defendants raised only their claim of lack of personal jurisdiction. This defense had been pled in the defendants' answer, but had not been raised since that time. The court found that the defendants had waived the personal jurisdiction defense by extensively participating in litigation of the merits for two-and-a-half years before affirmatively pressing the challenge to personal jurisdiction.
 
 II. DISCUSSION
 A. Waiver of Personal Jurisdiction
 
 13
 The defendants contend that the district court erred in finding that they had waived their objection to personal jurisdiction. The district court held that although the defendants pled lack of jurisdiction in their answer, they had waived the defense by extensive participation in the merits of the lawsuit without raising the defense affirmatively.
 
 
 14
 Federal Rule of Civil Procedure 12(h)(1) provides that "[a] defense of lack of jurisdiction over the person ... is waived ... if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." The defendants did raise the defense in their answer, and therefore the waiver provided for by Rule 12(h) did not occur. See Adden v. Middlebrooks, 688 F.2d 1147, 1156-57 (7th Cir.1982). However, the privileged defenses referred to in Rule 12(h)(1) "may be waived by 'formal submission in a cause, or by submission through conduct.' " Trustees of Central Laborers' Welfare Fund v. Lowery, 924 F.2d 731, 732 (7th Cir.1991) (quoting Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 996-97 (1st Cir.1983)); Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939); Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir.1990); see Burton v. Northern Dutchess Hosp., 106 F.R.D. 477, 481 (S.D.N.Y.1985) (asserting jurisdictional defect in answer does "not preserve the defense in perpetuity"). Indeed, "[a] party need not actually file an answer or motion before waiver is found." Central Laborers' Welfare Fund, 924 F.2d at 732-33; O'Brien v. Sage Group, Inc., 141 F.R.D. 81, 83 (N.D.Ill.1992), judgment aff'd, 998 F.2d 1394 (1993).
 
 
 15
 Here, the defendants fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction. They participated in lengthy discovery, filed various motions and opposed a number of motions filed by the bank. While the defendants literally complied with Rule 12(h), "they did not comply with the spirit of the rule, which is 'to expedite and simplify proceedings in the Federal Courts.' " Yeldell, 913 F.2d at 539 (quoting C. Wright & A. Miller, 5A Federal Practice and Procedure Sec. 1342, at 162 (2d ed.1990)). The district court could properly conclude that the defendants' delay in urging this threshold issue manifests an intent to submit to the court's jurisdiction. See, e.g., id. (defendants waived defense of personal jurisdiction where they participated in discovery, filed motions and participated in five-day trial without raising issue); O'Brien, 141 F.R.D. at 83-84 (failure to assert defense of improper service waived when defendant moved to set aside default without objecting to validity of service).
 
 B. Substitution of Estate
 
 16
 Defendant Donald Lubin died on June 22, 1990, and in August 1990, the Lubin estate was opened. The bank, however, did not move for substitution of the Administratrix until March 12, 1991, over eight months after Lubin's death was suggested. The district court granted the bank's motion to substitute. The court permitted the late filing, finding that the failure to file in time was the result of excusable neglect. All three defendants were represented by the same attorneys (as they are on this appeal). The court found that "the fact that after Lubin died his attorneys continued to file papers on his behalf and continued to participate in settlement discussions on his behalf created a reasonable belief in plaintiff's attorneys that Lubin's estate would be substituted without objection." March 14, 1991 Tr. at 2-3.
 
 
 17
 The defendants assert that the district court erred in not dismissing Lubin under Federal Rule of Civil Procedure 25(a)(1). The Rule provides: "Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record ... the action shall be dismissed as to the deceased party." While couched in mandatory terms, the Advisory Committee Notes to Rule 25 indicate that the 90-day requirement may be extended by Federal Rule of Civil Procedure 6(b). Rule 6(b)(2) states that a district court "for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect...." "[T]he history of Rule 25(a) and Rule 6(b) makes it clear that the 90 day time period was not intended to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted." Tatterson v. Koppers Co., 104 F.R.D. 19, 20 (W.D.Pa.1984).
 
 
 18
 C. Dismissal of "Aiding a Fraud" Counterclaim and Defense
 
 
 19
 The defendants contend that the district court erred in dismissing its second affirmative defense and Count II of the counterclaim based on an "aiding a fraud" theory. This theory was pled for the first time in the defendants' amended affirmative defenses and counterclaim, filed on October 4, 1990. The district court found that (1) the defense and counterclaim were untimely and (2) the claims were legally deficient. We review a district court's refusal to permit amendment of a complaint for an abuse of discretion. Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir.1982) (citing Zenith Radio Corp. v. Hazeltine, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)); Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 625 (7th Cir.1987).
 
 
 20
 Federal Rule of Civil Procedure 15(a) provides that leave to amend the pleadings "shall be freely given when justice so requires." The Supreme Court elaborated in Foman v. Davis:
 
 
 21
 If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
 
 
 22
 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); quoted in Murphy, 691 F.2d at 353.
 
 
 23
 The complaint in this action was filed in September 1988; the defendants did not file their amended affirmative defenses and counterclaim until October 4, 1990. Although other maneuvers occurred during this time, the facts of the 1984 transaction and representations preceding it did not change and must have been known to defendants. These facts could have been pled at any time after the filing of the initial complaint. See Kleinhans, 810 F.2d at 625. If the amendment were allowed, the bank would have been put to additional discovery, and thus prejudiced. We conclude that the district court did not abuse its discretion in refusing the amendment because of undue delay.
 
 
 24
 D. Dismissal of Fraud Counterclaim and Defense
 
 
 25
 The defendants assert that the district court erred in dismissing its first affirmative defense and Count I of the counterclaim. This defense and counterclaim were based on alleged fraudulent misrepresentations and omissions made by the bank. The district court struck this claim and defense on three grounds: (1) that the alleged misrepresentations were statements of opinion, not fact, and therefore were not actionable as fraud; (2) that the bank's knowledge was not properly pleaded; and (3) that loss causation was not properly pleaded. The defendants contend that the district court erred on all grounds. In the alternative, the defendants contend that we should reverse and remand for leave to amend.
 
 
 26
 The defendants alleged that a bank officer made statements that Sunrise No. 3 was structured so as to make a profit, that it was a "risk free" investment, that the horses were of highest quality, and that Sunrise No. 3 was managed by competent General Partners. The district court found that the defendants "failed to allege that the Bank made any false statements of fact and instead only allege[d] that they relied on the Bank's opinions. This cannot form the basis for a fraud claim." Mem.Op. at 5.
 
 
 27
 To establish fraud under Illinois law, the defendants must prove a misrepresentation of fact. Niemoth v. Kohls, 171 Ill.App.3d 54, 121 Ill.Dec. 37, 46, 524 N.E.2d 1085, 1094, appeal denied 122 Ill.2d 578, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988) (citing Mercado v. United Investors, Inc., 144 Ill.App.3d 886, 98 Ill.Dec. 702, 494 N.E.2d 824 (1986)). A "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation" under Illinois law. Peterson Indus., Inc. v. Lake View Trust & Sav. Bank, 584 F.2d 166, 169 (7th Cir.1978) (quoting Metro. Bank and Trust Co. v. Oliver, 4 Ill.App.3d 975, 283 N.E.2d 62, 64 (1972)); Barrington Press, Inc. v. Morey, 752 F.2d 307, 310 n. 1 (7th Cir.1985); Niemoth, 121 Ill.Dec. at 46, 524 N.E.2d at 1094. The statements pled here do not fall within any recognized exception to this general rule.
 
 
 28
 First, the defendants allege that the bank stated that Sunrise No. 3 was structured so as to make a profit. Their pleading did not allege what they understood was meant by "structured." It sounds like a reference to the form or design of the partnership. Although a statement that a partnership or other entity was "structured" in a specified manner could be a statement of fact concerning its form, the alleged statement did not supply those specifics, nor is there any allegation as to how the form of the partnership caused it to fail to make a profit. Without more specificity in this and other allegations, the pleading fails to state the circumstances constituting fraud with particularity. Rule of Civil Procedure 9(b). We agree with the district court that the statement was only an opinion that the partnership, not yet in existence, would produce a profit, and was not a representation of a pre-existent or present fact.
 
 
 29
 "It is well settled in Illinois that although representations as to the past income of a business are actionable, representations as to future income are not." Niemoth, at 46, 524 N.E.2d at 1094 (citing Mother Earth, Ltd. v. Strawberry Camel, Ltd., 72 Ill.App.3d 37, 28 Ill.Dec. 226, 390 N.E.2d 393 (1979)). See Barrington Press, 752 F.2d at 310 n. 1 (four-year projections of future sales and profitability of ongoing business are predictions or opinions regarding future business performance); Ziskin v. Thrall Car Mfg. Co., 106 Ill.App.3d 482, 62 Ill.Dec. 255, 259, 435 N.E.2d 1227, 1231 (1982) (representation of future profitability is an opinion of future occurrence, and without more, not actionable).
 
 
 30
 Defendants argue that when the bank stated that "Sunrise No. 3 'was structured so as to make a profit,' " they "were representing that the tangible features such as the horses used, fees paid and foal sharing agreements were sound," and were not simply "predicting earnings potential." Opening Brief at 17. We do not deem that a reasonable interpretation.
 
 
 31
 Defendants rely on Peterson v. Baloun, 715 F.Supp. 212, 216 (N.D.Ill.1989) (under Illinois law, a representation concerning profit expectations may be a promise of a future event which is actionable if used to perpetrate a fraud). We agree with Judge Williams in distinguishing Peterson because there the defendant "making the representation regarding the 'expected return' on investing in the company was an officer, director, and majority shareholder of the company" already in existence.
 
 
 32
 Second, the defendants allege that the bank represented that the partnership was a risk free investment. No one could take literally a statement that a program of breeding thoroughbred horses was "risk free." The defendants do not allege that the partnership was in operation at the time this statement was made. We conclude that this statement only expresses an opinion and is not actionable under Illinois law.
 
 
 33
 The defendants also allege that the bank officers stated that the horses were (necessarily "would be") of the highest quality, and that the partnership would be managed by competent general partners. These statements are no more than opinion. See, e.g., Nanlawala v. Jack Carl Assoc., Inc., 669 F.Supp. 204, 207 (N.D.Ill.1987) (statements that defendant had "expertise" and that he would "pick good trades" not actionable deception under Commodity Exchange Act, 7 U.S.C. Sec. 6h); Royal Business Machines, Inc. v. Lorraine Corp., 633 F.2d 34, 41, 45 (7th Cir.1980) (statements that machines "were of high quality" not a factual representation under Indiana law); Forbis v. Reilly, 684 F.Supp. 1317, 1322 (W.D.Pa.), aff'd without opinion, 862 F.2d 307 (3d Cir.1988) (statement that "this colt was one of the finest ever bred" and "perfect for use as a foundation stallion" no more than puffing and not actionable as fraud in Pennsylvania).
 
 
 34
 Defendants make no argument on appeal concerning the bank's omissions except to point out that the judge "failed to address the bank's omissions which were sufficient to support the fraud claim." Several of the alleged omissions were in terms of opinions or predictions of future happenings or references to the "structure" of the partnership without disclosing what was wrong about the "structure." Defendants' brief suggests no theory as to the duty of the bank to supply defendants with the omitted information or to correct the alleged errors in the Private Placement Memorandum. We shall not endeavor to devise arguments for them.
 
 
 35
 The district court also found that the defendants did not properly allege scienter, and that they had failed to allege loss causation. Because we conclude that the defendants have not alleged false statements of fact under Illinois law, we need not address these alternative grounds.
 
 
 36
 Accordingly, we AFFIRM.
 
 
 
 [1]
 Federal jurisdiction is based upon diversity. Illinois law governs all substantive issues