# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1167

DAVID BLOCKOWICZ, MARY BLOCKOWICZ,
and LISA BLOCKOWICZ,

*Plaintiffs-Appellants,*

*v.*

JOSEPH DAVID WILLIAMS and MICHELLE RAMEY,

*Defendants,*

and

ED MAGEDSON and XCENTRIC VENTURES, LLC,

*Third Party Respondents-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-CV-03955—**James F. Holderman**, *Chief Judge*.

ARGUED SEPTEMBER 23, 2010—DECIDED DECEMBER 27, 2010

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges*.

FLAUM, *Circuit Judge*.    David, Mary, and Lisa
Blockowicz received an injunction ordering Joseph

David Williams and Michelle Ramey to remove defamatory comments they posted about the Blockowiczs on www.ripoffreport.com ("ROR"), among other websites. Williams and Ramey never responded to the injunction, prompting the Blockowiczs to contact the websites on which the statements were posted to secure compliance with the injunction. Every website complied, except for ROR. The Blockowiczs asked the district court that issued the injunction to enforce it against Xcentric Ventures, LLC, ("Xcentric") the host of ROR, and Ed Magedson, the website's manager, pursuant to Rule 65(d)(2)(C). The district court declined, and the Blockowiczs appeal the district court's decision. They argue that Xcentric and Magedson fit within Rule 65(d)(2)(C), and thus should be bound by the injunction, because they had "actual notice" of the injunction, and they were "in active concert or participation" with the defendants in violating the injunction by failing to remove the defamatory statements. We affirm: Xcentric and Magedson were not "in active concert or participation" with the defendants pursuant to Rule 65(d)(2)(C).

## I. Background

The Blockowiczs filed a civil suit against Williams and Ramey ("the defendants") on June 30, 2009, alleging defamation *per se* based on statements regarding one or more of the Blockowiczs that the defendants allegedly posted on ROR and other websites. Two of the statements at issue were posted in 2003; the third was posted in 2009. After the defendants failed to respond, the

district court entered a default judgment and issued a permanent injunction that required the defendants to remove the defamatory statements from ROR, among other websites. The Blockowiczs sent notice of the injunction via email to an email address believed to belong to the defendants. The record does not confirm who owns the email account, but the Blockowiczs assert that the defendants implicitly acknowledged receipt by posting comments on the internet related to the lawsuit. The defendants never responded to or complied with the injunction. So the Blockowiczs contacted the operators of the websites on which the defendants posted the defamatory statements and requested that they remove the statements from their respective websites. Every website complied, except for ROR.

ROR is a website on which users post comments about bad business practices. It is operated by Xcentric and managed by Magedson. In order to post on ROR, users must enter into a contractual relationship with Xcentric by signing Xcentric's Terms of Service. The Terms of Service have a number of relevant provisions. First, they prohibit users from posting defamatory information:

> You will NOT post on ROR . . . any defamatory, inaccurate, abusive, obscene, profane, offensive, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights (including, but not limited to, intellectual property rights, and rights of privacy and publicity). You will use ROR in a manner con-

sistent with any and all applicable laws and regulations. By posting information on ROR, you warrant and represent that the information is truthful and accurate.

Next, the Terms of Service state that users "will defend, indemnify, and hold harmless Xcentric . . . for any losses, costs, liabilities and expenses (including reasonable attorneys' fees) relating to or arising out of your use of ROR, including, but not limited to, any breach by you of the terms of this Agreement."

Third, they state: "By posting information on ROR, you understand and agree that the material will not be removed even at your request. You shall remain solely responsible for the content of your postings on ROR."

Fourth, the Terms of Service provide that when users post information on ROR, they "automatically grant . . . to Xcentric an irrevocable, perpetual, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information and content . . . ."

ROR also provides information to parties considering suing the website:

> [A]lthough our Terms of Service prohibit users from posting false information, we simply cannot serve as the judge or jury in disputes between two parties. If you contact us and demand that we remove information because you contend that it's false and therefore a violation of our TOS, we have no way to determine if this is true, of [sic] if the in-

formation is really accurate. These issues have to be determined in court, not by us.

The Blockowiczs eventually filed a "Motion for Third Party Enforcement of Injunction," asking the district court to compel Xcentric to remove the defamatory postings by enforcing the injunction against Xcentric and Magedson pursuant to Federal Rule of Civil Procedure 65(d)(2)(C), in spite of the fact that Xcentric and Magedson were not parties to the suit that resulted in the injunction. Rule 65(d)(2)(C) authorizes courts to enforce injunctions against third parties who have "actual notice" of the injunction, and "who are in active concert or participation" with the parties who are bound by the injunction. Xcentric contested the Blockowiczs' motion. The district court held that Rule 65(d)(2)(C) did not authorize it to enforce the injunction against Xcentric and Magedson. The Blockowiczs timely appeal.

## II.  Analysis

### A.  Personal Jurisdiction Defense Is Waived

Xcentric and Magedson argue that the district court lacked personal jurisdiction over them. But even when a valid personal jurisdiction defense exists, the defense is waived if the objecting party fails to timely raise it, FED. R. CIV. P. 12(h)(1); *Ins. Corp. Of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982), or if the objecting party proceeds to litigate the case on its merits, *see Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993).

In its initial response to the Blockowiczs' motion to enforce the injunction against Xcentric and Magedson, Xcentric wrote that it "contests that the [district court] has personal jurisdiction over it and does not waive any arguments it has pursuant to Fed. R. Civ. P. 12(b)(2)." Even if this footnote adequately raised their defense, Xcentric and Magedson waived it by participating in the district court proceedings, which included both briefing and oral arguments addressing the merits of the Blockowiczs' claim. *See Meyer*, 10 F.3d at 1296-97 ("The defendants did raise the defense in their answer, and therefore the waiver provided for by Rule 12(h) did not occur. However, the privileged defenses referred to in Rule 12(h)(1) may be waived by formal submission in a cause, or by submission through conduct." (internal quotation marks and citations omitted)); *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995) ("The parties consented to personal jurisdiction simply by participating in the proceedings before the district court without protest."). Other than their one footnote, we find no indication in the record that Xcentric or Magedson ever pursued their personal jurisdiction defense before this appeal. Their defense is waived.

**B. Xcentric and Magedson Are Not Bound By The Injunction Pursuant To Rule 65(d)**

As a preliminary issue, we note that the Blockowiczs' motion asked the district court to enforce the injunction against third parties Xcentric and Magedson. At the core of their case below and on appeal, the Blockowiczs

argue that Xcentric and Magedson assisted the de-
fendants in violating the injunction. Accordingly, we
view this case as one for contempt, the usual context
for enforcing injunctions against third parties who assist
enjoined parties in violating an injunction. *See Regal
Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) ("Successors
and assigns may, however, be instrumentalities through
which defendant seeks to evade an order or may come
within the description of persons in active concert or
participation with them in the violation of an injunction.
If they are, by that fact they are brought within scope
of contempt proceedings by the rules of civil procedure.");
*Illinois v. U.S. Dep't of Health & Human Servs.*, 772 F.2d
329, 332 (7th Cir. 1985) ("[Rule 65(d)] is a codification of
the common-law rule allowing a non-party to be held
in contempt for violating the terms of an injunction
when a non-party is legally identified with the de-
fendant or when the non-party aids or abets a violation
of an injunction."). Whether we consider this a suit for
contempt or simply a motion to enforce an injunction
against third parties, however, our analysis under
Rule 65(d)(2)(C) is the same.[1]

---

[1] We note that before a third party can be found in contempt
under Rule 65(d)(2)(C), a court must first find that the injunc-
tion was actually violated. *See Herrlein v. Kanakis*, 526 F.2d
252, 254 (7th Cir. 1975). The district court's opinion does not
clearly articulate whether the defendants violated the injunc-
tion. It indicates that the defendants had not removed the
postings from ROR, which the injunction requires them to do,

(continued...)

We review a district court's adjudication of civil contempt for abuse of discretion. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1154-55 (7th Cir. 1994). In doing so, we review the district court's legal conclusions de novo and its findings of fact for clear error. *Id.*

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction binds "the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." "The purpose of the rule is to ensure 'that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" *U.S. Dep't of Health & Human Servs.*, 772 F.2d at 332 (quoting *Regal Knitwear Co.*, 324 U.S. at 14). Consistent with this purpose, we have explained that a person is in "active concert or participation" with an enjoined party, and thus bound by the injunction, if "he aids or abets an enjoined party in violating [the] injunction," or if he is in privity with an enjoined party. *Nat'l Spiritual Assembly of the Baha'is of the U.S. of Am. Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is*

---

[1] (...continued)
but nowhere does it expressly conclude that the defendants violated the injunction. Our analysis proceeds as if the district court made such a finding, but the outcome would be the same if the district court did not.

*of the U.S. of Am., Inc.*, No. 08-2306, slip op. at 20, 2010 WL 4721593, at *9 (7th Cir. Nov. 23, 2010); *see also Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919 (7th Cir. 1996); *United States v. Bd. of Educ. of Chicago*, 11 F.3d 668, 673 (7th Cir. 1993). The party seeking to enforce the terms of an injunction against a third party bears the burden of proving that the third party is within the scope of the injunction. *New York ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996).

Xcentric concedes that it received actual notice of the injunction. Further, in seeking to enforce the injunction pursuant to Rule 65(d)(2)(C), the Blockowiczs argue solely that Xcentric and Magedson aided and abetted the defendants; they do not assert a privity-related argument. Thus, the only issue on appeal is whether the district court erred in concluding that third parties Xcentric and Magedson did not aid or abet the defendants in violating the injunction, and thus that Xcentric and Magedson are not bound by the injunction pursuant to Rule 65(d)(2)(C).

The Blockowiczs argue that Xcentric's contract with the defendants, the Terms of Service, amounts to an act that aids and abets the defendants' publication of the comments at issue. The fact that the contract was signed before the injunction was issued is ineffectual, they argue, because its force is the same regardless of when it was signed: The contract represents Xcentric's ongoing refusal to remove a posting at any time, before or after the injunction was imposed. The Blockowiczs acknowledge that the Terms of Service expressly prohibit

the defendants from posting defamatory comments, and expressly permit Xcentric to seek indemnity for any liability it incurs as a result of defamatory comments. But they argue that the provision prohibiting defamatory statements is illusory because Xcentric refuses to enforce it, presumably by not removing defamatory statements.

The Blockowiczs' arguments are unavailing. Actions that aid and abet in violating the injunction must occur after the injunction is imposed for the purposes of Rule 65(d)(2)(C), and certainly after the wrongdoing that led to the injunction occurred. This requirement is apparent from Rule 65(d)(2)'s text, which requires that non-parties have "actual notice" of the injunction. A non-party who engages in conduct before an injunction is imposed cannot have "actual notice" of the injunction at the time of their relevant conduct. Not to mention, permitting Xcentric's and Magedson's pre-injunction conduct to bind them to the injunction would be inconsistent with the purpose of Rule 65(d)(2)(C), which is to prevent defendants from rendering injunctions void by carrying out prohibited acts through third parties who were not parties to the original proceeding. *See U.S. Dep't of Health & Human Servs.*, 772 F.2d at 332. The defendants agreed to the Terms of Service before the injunction was imposed and before they even posted the statements at issue. The Blockowiczs' attempt to rely on the Terms of Service is unavailing.

Further, the Blockowiczs presented no evidence that Xcentric or Magedson took any action to aid or abet the defendants in violating the injunction after it was issued,

either by enforcing the Terms of Service or in any other way. The district court explained that the Blockowiczs failed to present any evidence that either Xcentric or Magedson had any contact with the defendants after the injunction was issued, or that they worked in concert with the defendants to violate the injunction. To the contrary, the record indicates that Xcentric and Magedson have simply done nothing relevant to this dispute since the defendants agreed to the Terms of Service, which occurred before the injunction was issued. Further, the fact that Xcentric is technologically capable of removing the postings does not render its failure to do so aiding and abetting. Xcentric's and Magedson's mere inactivity is simply inadequate to render them aiders and abettors in violating the injunction. *See* FED. R. CIV. P. 65(d)(2); *Regal Knitwear Co.*, 324 U.S. at 13 ("The courts . . . may not grant . . . an injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law."); *E.A. Renfroe & Co., Inc. v. Moran*, 338 Fed.Appx. 836, 840 (11th Cir. 2009) ("The law is clear that a court may not enforce an injunction against a nonparty 'who act[s] independently' of the enjoined party." (quoting *Regal Knitwear Co.*, 324 U.S. at 13)); *Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000).

The Blockowiczs' argument that the Terms of Service are illusory because Xcentric has refused to remove the defendants' defamatory statements is similarly unavailing. The Terms of Service allow Xcentric to recover from users for any loss related to their use of

ROR, including any breach of the Terms of Service. Xcentric very well may sue users if and when the defamatory comments affect Xcentric's bottom line. Xcentric has not sought to enforce its prohibition on defamatory comments against the defendants, but that does not render the prohibition illusory. To the contrary, in light of Xcentric's right to indemnity from losses resulting from users' violations of the Terms of Service, the prohibition on defamatory comments is certainly not illusory. The district court made no factual finding that refutes this conclusion, and we are in no position to make such a finding on appeal.

The Blockowiczs also argue that Xcentric and Magedson are aiding and abetting the defendants by selectively enforcing provisions in the Terms of Service: They are enforcing the provision stating that ROR will not take down a posting, but not the provision that prohibits posting defamatory content. As explained above, however, Xcentric's and Magedson's failure to take down the statements does not indicate that they have taken any action since the injunction was issued. In other words, Xcentric's and Magedson's failure to respond to the injunction does not demonstrate that they enforced any provision of their Terms of Service. The record indicates nothing more than that Xcentric and Magedson have ignored the injunction.

Finally, the Blockowiczs argue that this case is analogous *Reliance Insurance Company v. Mast Construction Company*, 84 F.3d 372 (10th Cir. 1996). In that case, a restraining order prohibited a corporation and its

officers from withdrawing or transferring funds. The Tenth Circuit held that a bank, not a party to the action that resulted in the restraining order, could be held in contempt under Rule 65(d) when it "aided and assisted . . . in completing a fairly complicated series of fund withdrawals and transfers in apparent violation of the . . . restraining order." 84 F.3d at 377.

But *Reliance* and similar cases are distinct from this case. In those cases, the bank's act of transferring funds occurs after the injunction is imposed, unlike here, where Xcentric's only act, entering into a contract with the defendants, occurred long before the injunction was issued. Since the injunction was issued, Xcentric has simply done nothing, and it has certainly not actively assisted the defendants in violating the injunction.

Lastly, the Blockowiczs assert that even if Xcentric did not aid and abet the defendants under Rule 65(d)(2)(C), the district court should have invoked its inherent authority to bind Xcentric and Magedson to the injunction, or otherwise secure the removal of the defendants' statements from ROR. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989) ("The concept that district courts exercise procedural authority outside the explicit language of the rules of civil procedure is not frequently docu-mented, but valid nevertheless."). There is no indication that the Blockowiczs raised this argument to the district court. If they did not, this argument is waived. *See Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1261-62 (7th Cir. 1987). But even if not waived, this argument

is unpersuasive. We review with deference the district court's decision to invoke its inherent authority. Neither the record nor the arguments on appeal indicate that the district court abused its discretion.

With sympathy for the Blockowiczs, we conclude that Rule 65(d)(2)(C) is not the appropriate mechanism for achieving the removal of the defendants' posts. Xcentric and Magedson have simply failed to act in any way relevant to this dispute since agreeing to the Terms of Service with the defendants, which they did before the injunction was issued and before the statements at issue were even posted. Rule 65(d)(2)(C) is not broad enough to bind Xcentric and Magedson to the terms of this injunction in light of their inactivity. We, therefore, must affirm the district court's decision that neither Xcentric nor Magedson fall within Rule 65(d)(2)(C). The Blockowiczs likely could have pursued a contempt charge against the defendants for their failure to comply with the injunction. This avenue for relief may still be available. But Rule 65(d)(2)(C) affords the Blockowiczs no remedy against Xcentric and Magedson.

## C. Illinois' Statute Of Limitations For Defamation Claims Poses No Bar

Both on appeal and before the district court, the parties dispute whether Illinois' statute of limitations precludes the Blockowiczs from pursuing their defamation claims. But the statute of limitations defense belongs to the defendants, who have never asserted it and who are not parties to this appeal. *See* FED. R. CIV. P. 8(c)(1) ("In re-

sponding to a pleading, a *party* must affirmatively state any avoidance or affirmative defense . . . ." (emphasis added)). As a general principle, affirmative defenses, like claims, are personal. A person can no more assert someone else's affirmative defense than he can someone else's cause of action. Although there are exceptions to this general principle—subrogation, for example—Xcentric and Magedson cite no authority indicating that any exception applies under the circumstances of this case, and we find none. Xcentric and Magedson cannot assert the defendants' statute of limitations defense.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court.